## De Forest vs. Holum.

**Vendor's Lien: Contingent Purchase Moneys.** *Money payable for land upon future contingency, becomes purchase money when the contingency happens. Taking mortgage back for the liquidated purchase money, not a waiver of lien for such future contingent sum. Such lien enforceable against devisee.*

By contract under seal, in 1869, plaintiff agreed to sell to O. certain lands, "containing in all *about* 205 acres;" and O. agreed to pay therefor $50 per acre, and, in part payment of the purchase money, to sell to plaintiff certain other land for $4,000; to pay $1,000, with interest, on a certain day in 1869; and to pay in four equal annual installments, at specified times thereafter, with interest, "the balance of the purchase money, amounting to *about* $5,250;" the instrument reciting that it was impossible to ascertain the full purchase price until the lands first mentioned should be surveyed. O. further covenanted that if a certain railroad should be built and completed before January 1, 1872, he would pay plaintiff the additional sum of $500, "to be paid in one year after the last payment of the purchase money above stated becomes due." There were also agreements for the survey of the premises sold by plaintiff, and the execution of a deed by each party of the land sold by him, and that O., on the execution of plaintiff's conveyance to him, should execute to plaintiff "notes for the balance of the purchase money unpaid, secured by a mortgage on the premises" so conveyed to him, "with same conditions as to payment as stated in this agreement;" and the terms of the contract are declared binding on the heirs, executors, administrators and assigns of the parties. The lands first mentioned were surveyed, and mutual conveyances executed as agreed; and the complaint avers that in

De Forest vs. Holum.

March, 1869, O. gave plaintiff a mortgage of the lands sold by the latter, "to secure the payment of $6,186, being the balance of the purchase money then owing upon said contract, exclusive of the $500" above mentioned. In September, 1869, O. died seized of all the lands so purchased by him, and these by his will were devised to the defendant. The railroad mentioned in the contract was completed before January 1, 1872; and the complaint avers that defendant thereby became indebted to plaintiff, on the 1st of June, 1874, in the sum of $500; and, demand and refusal of payment being averred, he seeks in this action to enforce payment of that sum by a foreclosure of defendant's rights in the land. *Held*, on demurrer to the complaint,

1. That the mortgage which O. was by said contract required to execute, was one to secure payment of the unpaid balance of the positive liquidated purchase money only (to wit, the sum to which the lands sold by plaintiff amounted at $50 per acre), and not of the contingent future indebtedness of $500.

2. That the taking of a mortgage for such liquidated purchase money, and the omission therefrom of the covenant for payment of an additional contingent sum of $500, were not a waiver of the vendor's possible right of a future lien for such additional sum.

3. That when the contingency named in the contract happened, the $500 became purchase money of the lands, and the vendor acquired a lien upon the lands therefor.

4. That an action for the enforcement of such lien will lie against the purchaser's devisee of said lands.

APPEAL from the Circuit Court for *Dane* County.

On the 9th of February, 1869, the plaintiff and one Olsen entered into a contract under seal, for the sale and purchase of certain land of the plaintiff in Dane county, which is described in the contract by metes and bounds, and as "containing in all about two hundred and five acres of land." In consideration thereof, Olsen "agrees to pay to the said *De Forest* the sum of fifty dollars per acre for said premises, in the manner and at the times hereinafter stated," and, "in part payment of said purchase money, agrees to sell unto said" *De Forest* a certain tract of land described as the S. 1-2 of the S. E. 1-4 of section 17, for the sum of $4,000. "In further consideration of the premises first above described," Olsen "agrees to pay

the balance of said purchase money, amounting to about the sum of $6,250 (it being impossible to ascertain the full purchase price of said premises first above described, until the same shall have been surveyed), in manner as follows, to wit: $1,000 on or before the 1st day of November, 1869, and the balance of said purchase money, amounting to about the sum of $5,250, to be paid in four equal annual payments: on the first day of June, 1870, on the first day of June, 1871, on the first day of June, 1872, and on the first day of June, 1873, with interest from the date hereof, at the rate of seven per cent. on the whole principal sum unpaid, to be paid at the time each payment becomes due, with the privilege to the said [Olsen] of paying the whole or any part of said principal sum, at any time before the same becomes due and payable. All payments to be made at the Bank of Madison. And in further consideration of the premises first above described," Olsen " agrees that in case the projected railroad passing through said premises shall be built and completed on or before January 1, 1872, from any distant point to said premises, that then [he] will pay to [De Forest] the additional sum of five hundred dollars, to be paid in one year after the last payment of the purchase money above stated, becomes due." De Forest further agrees that " on or before the first day of April next he will have the premises first above described surveyed by a competent surveyor," and that, on receiving a warranty deed from Olsen and wife of the aforesaid S. 1-2 of the S. E. 1-4 of section 17, subject to a certain lease (which deed Olsen covenants to execute and deliver " on or before the first day of April next"), he, De Forest, with his wife, will execute and deliver to Olsen a warranty deed of the premises first above described. " And at the same time of the execution of the said deed," Olsen agrees to execute to De Forest, " notes for the balance of the purchase money unpaid, secured by a mortgage on the premises first above described, with same conditions as to payment as stated in this agreement." Then follow provisions for the

immediate possession by each party of the premises sold to him, and a provision "that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties."

Shortly after the execution and delivery of the above contract, plaintiff caused the premises sold to Olsen to be surveyed; and on the 23d of March, 1869, he with his wife executed and delivered to Olsen a warranty deed of said premises, as agreed, in which it is recited that the premises contain altogether 203.72 acres; and soon after Olsen conveyed to plaintiff the land sold to the latter, according to the terms of said contract. On the same 23d of March aforesaid, Olsen executed and delivered to plaintiff a mortgage of the lands purchased by the former, to secure the payment of $6,186, being, as plaintiff alleges, "the balance of the purchase money then owing upon the said contract, exclusive of the five hundred dollars," the payment of which, by the terms of the contract, was made contingent upon the building of a railroad over the land as therein mentioned. On the 8th of September, 1869, Olsen died seized and possessed of all the land sold to him by the plaintiff as aforesaid; and by his will he devised and bequeathed all his estate, real and personal, to his wife, the defendant, *Kari P. Holum*, who was in possession of the land, claiming to own it, up to the commencement of this action. The projected railroad mentioned in the above contract, known as the Madison and Portage railroad, was built and completed from the city of Portage to and through the premises sold to Olsen, and to the city of Madison, in January, 1871; and plaintiff alleges that by virtue of this fact there became due and owing to plaintiff on said contract the additional sum of $500, payable June 1, 1874, "being a portion of the balance of the unpaid purchase money of said premises."

After setting forth the above facts, the complaint herein alleges that plaintiff, before the commencement of this suit, demanded payment of said sum of $500 and interest due thereon;

that no part of the same has been paid; and that there is now justly due plaintiff upon said contract said sum of $500, with interest. The specific relief sought is the enforcement of a lien in plaintiff's favor for said sum of $500 and interest, on the land sold to Olsen, by a strict foreclosure or a foreclosure and sale.

The defendant demurred to the complaint as not stating a cause of action; and the plaintiff appealed from an order sustaining the demurrer.

*John D. Gurnee,* for appellant:

"The execution and delivery of a deed by the vendor, pursuant to an executory contract for the sale of land, does not extinguish the agreement on the part of the vendee." *Bogart v. Burkhalter,* 1 Denio, 125; *Johnson v. Hathorn,* 2 Keyes, 476; 3 id., 126; *Barker v. Bradley,* 42 N. Y., 316; *Witbeck v. Waine,* 16 id., 532; *Atwood v. Norton,* 27 Barb., 644; *Bennett v. Abrams,* 41 id., 625; *Silliman v. Tuttle,* 45 id., 177; *Mott v. Coddington,* 1 Rob., 274; *Carr v. Roach,* 2 Duer, 20. The question whether an agreement in writing for the sale and conveyance of land is merged in or extinguished by a deed subsequently executed by the vendor, is a question of construction as to the intent of the parties, to be gathered from a consideration of the entire contents of the instruments. Where the things stipulated in the agreement to be done by the vendor are distinct in their character, and may be done at successive times, unless the performance of one of them can well be supposed as designed by the parties to be a complete execution and consummation of the entire contract, and accepted as such, the doctrine of merger, waiver, or full performance, should not be applied. *Atwood v. Norton,* 27 Barb., 638; *Bennett v. Abrams,* 41 id., 619. The agreement required that a mortgage be given to secure both the fixed liability and the contingent liability. It may be suggested that taking a mortgage to secure the fixed liability, when plaintiff was to become entitled to mortgages to secure both, was a waiver of his right to a mortgage to secure

De Forest vs. Holum.

the contingent liability. In taking a mortgage for the fixed liability, however, he took precisely what was stipulated he should ; but it was also stipulated that he should have more. To justify a holding that he has surrendered his right to more, there must be shown a consideration, or at least, an unmistakable and clearly expressed intention to make such surrender. There is no such intention shown in this case.

" Where a deed has been given in pursuance of a preliminary contract for the sale of land containing stipulations of which the conveyance itself is not a performance, it is a question of *intention*, whether the parties have surrendered those stipulations. In the absence of all proof there is no presumption that either party intends to give up the benefit of covenants of which the conveyance is not a performance or satisfaction." *Morris v. Whitcher*, 20 N. Y., 41 ; *Lewis v. McMillen*, 41 Barb., 420.

This would be an action to foreclose a vendor's lien, were it not that there was an express agreement to give a specific lien upon the property. It becomes a suit for specific performance and foreclosure, very similar to the case where, in the same action, suits are brought to perfect defective mortgages and to foreclose them.

*Vilas & Bryant*, for respondent:

By parting with his title to the land, and accepting the express lien for $6,186, which was duly paid and the mortgage discharged, the plaintiff manifested an intention to waive, and did waive, any implied lien he might have for any part of the purchase money. The reserving of an express lien to a certain extent, negatives an implied lien to a greater extent. *Brown v. Gilman*, 4 Wheat., 255. And in accordance with this rule it is settled in this country, as well as in England, that whenever any security is taken by the vendor on the land, for the whole or any part of the purchase money, the equitable lien of the vendor is waived, unless there be an express agreement. that it shall be retained. . *Fish v. Howland*, 1 Paige, 30 ; *Shirley v. Sugar Refinery*, 2 Edw., 505 ; *Coit v. Fongera*, 36 Barb.,

195; *Williams v. Roberts*, 5 Ohio, 35; *Hunt v. Waterman*, 12 Cal., 304; *Bond v. Kent*, 2 Vernon, 281; 3 Sugden on Vendors, 191; *Sears v. Smith*, 2 Mich., 248; *Hadley v. Pickett*, 25 Ind., 452; *Copper v. Spottiswoode*, Tamlyn, 21.

RYAN, C. J.   The contract between the appellant and the respondent's devisor distinguishes throughout between the positive, liquidated purchase money and the contingent purchase money of the premises.   The purchaser agrees to pay $50 an acre for the land, and to convey other land at a fixed price " in part payment of said purchase money," referring immediately to the $50 an acre, and on terms stated to pay " the balance of said purchase money amounting to about " a sum plainly representing the residue of the $50 an acre and excluding the $500; a phrase again repeated with the same significance; and later in the contract, by an independent covenant, agrees to pay, upon a contingency apparently likely to increase the value of the land, " the additional sum of $500, to be paid in one year after the last payment of the purchase money above stated becomes due."   He then agrees to give notes and a mortgage on the premises " for the balance of the purchase money unpaid," clearly repeating the same words in the same sense, and excluding the $500.   The notes and mortgage were to be given on conveyance, when a survey should determine the exact amount, within two months.   The contingency on which the $500 was to become payable might occur for nearly three years.   And it is quite apparent, on the face of the contract, not only that the $500 was not to be included in the mortgage, but that it was not to be included because it was not considered to be then part of the purchase money; the parties providing for the $50 an acre as the full purchase money *in presenti*, and separately for another sum which might or might not become *in futuro* additional purchase money, dependent on a contingency.   Failing the contingency, the whole purchase money was satisfied by the notes and mortgage; happening the

contingency, another sum would then become purchase money, which before had formed no part of the purchase money.

This is plainly the construction of the parties, and it would be unsafe to question it. We cannot undertake to say that, pending the transaction which began in the contract and ended in the conveyance and mortgage, the $500 could properly be considered purchase money. The contingency might not happen. An estate dependent on such a contingency would not vest until the occurrence of the contingency (Fearne, 5–9; *Boraston's Case*, 3 Rep., 19 a); nor would a legacy so contingent sooner vest. 1 Roper, 501; *Atkinson v. Turner*, 2 Atkyns, 41. And we hold the effect of the contract to be, that the $500 was not purchase money before the railroad was built; the appellant having in the meantime no vested interest in it, neither *jus in re* nor *jus ad rem*, but only the conditional covenant to pay upon the contingency; but that upon the building of the railroad, the $500 became additional purchase money of the premises, vesting a right of recovery in the appellant, and attaching a vendor's lien for it on the land, unless the lien had been waived before.

It is true that the covenant might have been repeated in the mortgage, and secured by it. But we cannot think the omission to have been intended to waive the vendor's lien for the $500, if and when such lien should accrue; but rather to have rested on the understanding that such lien had not then accrued and might never accrue. The parties apparently intended to secure certainties, not possibilities. Upon the delivery of the deed, the right to the purchase money proper became a perfect and vested right; the right to the $500, purchase money only *in posse*, could not well be said to be even inchoate. It rested in possibility only. If the appellant had taken no security, his vendor's lien for the actual purchase money would have instantly attached; but by the terms of the contract, his lien for the $500 would be dependent on the contingency, and could not attach before its occurrence. If there

had been foreclosure of the vendor's lien before the building of the railroad, we cannot see how any provision could have been made for the $500. It might never ripen into a lien. There was only a contingent right of lien for the contingent purchase money, both waiting on the contingency. And so, in harmony with the whole tenor of the contract, it appears to have been the intention of the parties to cover by the mortgage only the lien which would presently attach without it for present purchase money; leaving the contingent purchase money to take care of itself in the future.

It seems very certain that the covenant did not merge in the mortgage, because the mortgage and the covenant relate to different things; and the covenant is in terms to survive the mortgage. And it is difficult to perceive on what principle taking security for the existing lien could operate to waive a possible right of future lien for a distinct sum contingent upon an uncertainty.

"The authorities quite uniformly say that the vendor has in all cases, upon the sale of real estate, an equitable lien upon the estate sold, for the unpaid purchase money, as between him and the vendee, unless there is either an express or implied agreement to waive such lien." *Willard v. Reas*, 26 Wis., 540.

The English and American authorities on waiver of vendor's lien, are not wholly in accord. WALWORTH, C., states the general rule to be in this country, "to consider the lien as waived whenever any security is taken on the land, . . . . . for the whole or any part of the purchase money, unless there is an express agreement that the equitable lien on the land shall be retained." *Fish v. Howland*, 1 Paige, 20. And the reason of the rule is stated by MARSHALL, C. J., to be that "the express contract that the lien shall be retained to a specified extent, is equivalent to a waiver of that lien to any greater extent." *Brown v. Gilman*, 4 Wheat., 255.

It is apparent that this principle has little application to a case like this. For here it is not a part of the same lien, for

De Forest vs. Holum.

the same purchase money, which was retained by the mortgage, but a different lien, for a different sum, accruing upon different conditions, and attaching at a different time.

In cases of the character spoken of by WALWORTH, C., as far as we are acquainted with them, the purchase money is one entire thing, payable sometimes by instalments, but accruing as one liquidated whole by specific agreement, not dependent on contingencies: the subject, in the absence of security, of one single lien. And in such cases, taking an express lien for a part is well held to be a waiver of the implied lien for the whole, unless the contract expressly divides the implied lien and preserves it for the unsecured purchase money. But when the purchase money does not consist of one entire liability, but of several distinct liabilities, accruing severally, at several times, and upon several conditions, and the corresponding liens are not divisible merely, but are essentially divided and distinct, we confess ourselves unable to appreciate how taking security for one lien when it accrued, to its full extent, should operate to waive another lien, then resting in possibility only, when it should happen to accrue long after. We cannot think that the parties here so intended, or that the rule should operate to force such an effect upon them.

And the rule is not so rigid as to disregard the intention of the parties. "Taking a security has been deemed, at most, no more than a presumption, under some circumstances, of an intentional waiver of the lien, and not as conclusive of the waiver." 2 Story's Eq., § 1226. Looking to the contract for the meaning of the parties, we understand them not to have intended the mortgage for the liquidated purchase money to be a waiver of the vendor's lien for the contingent purchase money, but to leave it to the security of that lien if it should accrue: running the intermediate risks of all vendor's liens. Of course the lien remains good against the purchaser's devisee. "In natural justice and equity" she "who has gotten the estate of another ought not in conscience, as between them,

to be allowed to keep it and not pay the full consideration money." *Tobey v. McAllister*, 9 Wis., 463.

For these reasons the demurrer to the appellant's complaint was not well taken, and the order of the court below sustaining it must be reversed.

*By the Court.* — Order reversed.