MILLS and another, Appellants, vs. THE CHICAGO & NORTH-WESTERN RAILWAY COMPANY, Respondent.

*March 20 — May 16, 1899.*

*Deeds: Option contract: Merger: Covenants: Consideration: Evidence.*

1. Defendant's right of way over the lands of plaintiffs, both holding title from a common grantor, was three times crossed by a stream that furnished the power for their mill. At each crossing a bridge had been maintained and the passageways under the two southerly bridges, used by plaintiffs and their grantors as private ways from their mill to the highway for more than twenty years. It being desired by defendant to close the opening in the northerly of such two bridges, and divert the stream so that it should not recross the right of way, the plaintiffs gave an option agreement for a deed, consenting to such changes, in consideration of $500 and the building and maintaining of a grade crossing in lieu of that under the said northerly bridge, and releasing all damages, but expressly providing, among other things, that it was given with the understanding and stipulations that the passage under the southerly bridge should be continued and maintained for them by defendant in in good and suitable manner. Thereupon the option agreement was accepted and the money consideration paid, and a deed executed and delivered, conveying and warranting the right to divert the waters of the stream, together with the right to close up the opening of the designated bridge, and releasing damages therefor, provided the grade crossing was constructed and maintained. The deed contained a clause that nothing therein contained should interfere with the passage under the other bridge. The channel of the stream was changed, the opening filled in and grade crossing constructed, and, by the construction of a new bridge, the passageway under

Mills and another vs. The Chicago & Northwestern R. Co.

the southerly bridge was narrowed, so that between the railroad grade and the margin of the stream the width of 100 feet was reduced to from seven to ten feet and the roadway crowded into that space. In an action for damages for failing to keep the passageway open as it had previously existed, *held*, that the option agreement and deed together constituted the contract of purchase and together showed the consideration that was to be forthcoming from defendant. The option agreement was, therefore, admissible in evidence.

2. The description in a deed, otherwise uncertain, should be construed with reference to the actual rightful state of the property at the time of its execution, and parol evidence of that state is admissible to show the true consideration upon which it is based, even if it differs from that expressed in the deed, if not inconsistent with it.

3. The defendant having absolute title to the entire right of way over plaintiffs' land before they obtained title, and the deed only granting the right to divert the stream and close up the northerly bridge, the clause that nothing therein contained should interfere with the passage under the southerly bridge did not and could not operate as a limitation upon anything therein granted, nor could such words operate as a construction upon any of the preceding language of the deed, since none of such language pertained to the portion of defendant's right of way in question.

4. Said clause in the deed recognized a then-existing right in the plaintiffs of passing and repassing under the bridge as had been done for over twenty years, and that such right should be continued as in the past. By accepting said deed, therefore, defendant became bound by such recognition and conditions as fully as though the deed had also been executed by it.

5. Such part of the agreement to be performed by the defendant, having no connection with any right or privilege granted, did not merge in, or become ineffectual by reason of the execution and delivery of, the deed.

APPEAL from a judgment of the circuit court for Columbia county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

The facts are stated in the opinion.

For the appellants there was a brief by *Andrews & Palmer*, attorneys, and *Burr W. Jones*, of counsel, and oral argument by *H. E. Andrews* and *Burr W. Jones*.

For the respondent there was a brief by *Fish, Cary, Upham*

*& Black,* and oral argument by *John T. Fish.*    To the point that the action could not be maintained on both an offer and upon a consummated agreement, but must be maintained if at all on the final agreement, they cited *Wis. F. & M. Ins. Co. Bank v. Wilkin,* 95 Wis. 111; *Elofrson v. Lindsay,* 90 Wis. 203; *Herbst v. Lowe,* 65 Wis. 316; Jones, Evidence, § 460; *Badart v. Foulen,* 80 Md. 579; *Ohlert v. Alderson,* 86 Wis. 433; *Caldwell v. Perkins,* 93 Wis. 89; *Beers v. North Milwaukee T. S. Co.* 93 Wis. 572.

CASSODAY, C. J.    This is an action to recover damages for the alleged breach of a contract or covenant in failing to keep a certain passageway under the railway track open, as it had for many years previously existed, constituting a part of the private roadway running from the public highway on the southwesterly side of the railway track to the premises of the plaintiff on the northeasterly side of such railway track.    Issue being joined and trial had, the court, at the close of the testimony on behalf of the plaintiffs, granted a nonsuit, and from the judgment entered thereon the plaintiffs bring this appeal.

The complaint alleges, and the answer admits, or there was evidence given or offered tending to prove, the following facts:

The defendant in 1871 obtained a conveyance of a strip of land for a right of way across the S. W. ¼ of the S. W. ¼ of section 16, and the N. E. ¼ of the S. E. ¼ of section 17, township 10 N., of range 8 E., in the town of Lodi, in Columbia county, from one Jonas Narracong and wife, from whom, several years ago, the plaintiffs, through mesne conveyances, obtained their title to said lands, subject to such right of way.    Upon obtaining such conveyance of such right of way in 1871, the defendant constructed its railway thereon, and the same ran in a northwesterly direction toward Baraboo and in a southeasterly direction toward Madi-

son. The railway so constructed passed from one of the forties so described to the other at or about where the corners of such two forties came together. The public highway from Lodi in a northwesterly direction to Okee runs nearly parallel to the railway track, and about 480 feet southwesterly from the point where the corner of such forties join. The mill or mill site of the plaintiffs was about sixty feet northeasterly from the defendant's right of way, near the point where the corners of such forties join, and was formerly propelled by water drawn from Spring creek by a race way on the south side of that stream. Spring creek ran in a northeasterly direction across the Lodi and Okee highway mentioned, and thence northerly and across the defendant's right of way about 1,080 feet southeasterly from the mill, and at which point there was, prior to 1896, a wooden railway bridge on piles, known as Bridge No. 312, and from thence Spring creek continued its course in a northerly direction, and then bent to the westward about 150 feet north of the mill, when it turned, and ran in a southwesterly direction to and across the defendant's right of way about 240 feet westerly from the mill. Prior to 1896 there was a wooden railway bridge over Spring creek at the place of such crossing, known as Bridge No. 313. Such stream ran from such crossing in a westerly direction, and finally recrossed the defendant's right of way to the northeasterly side thereof. Prior to 1896 there was a dam across Spring creek about 210 feet northerly from bridge No. 312, and a mill-race leading from the dam, and several feet south of the main channel, to the mill, and a private roadway extended from the Lodi and Okee highway about 120 feet east to Spring creek, and ran northerly and under the pile bridge No. 312 about 100 feet west of the stream, and from thence westerly to the mill and other premises of the plaintiffs. It is the closing of that opening under the bridge and 100 feet west of the stream that is now complained of. Prior

to 1896 there was also a private roadway from the Lodi and
Okee highway northerly to and under bridge No. 313, and
from thence to the mill and other premises of the plaintiffs.
Prior to 1896 the defendant contemplated improving, and
was in the act of improving, its roadbed, and building a
double track from Madison to Baraboo, including the prem-
ises in question.

For that purpose the defendant, January 22, 1896, pro-
cured from the plaintiffs an instrument in writing, executed
by them under their hands and seals, reciting a considera-
tion of one dollar, wherein and whereby they, for them-
selves, their heirs, executors, administrators, and assigns,
covenanted and agreed that they would sell to the defend-
ant or its assigns, at any time within sixty days from that
date, the rights in the lands therein described, to the effect
that it have the right to alter the channel and bed of Spring
creek so that the creek should flow wholly on the north-
easterly side of the railway tracks of the defendant, and
over and across so much of the N. E. ¼ of the S. E. ¼ of sec-
tion 17 as might belong to or be possessed by the plaintiffs,
together with the right to fill in bridge No. 313 of the de-
fendant's railway line, releasing all damages for so turning
the creek bed and causing the creek to flow entirely on the
northeasterly side of the tracks, and for filling the opening
then spanned by bridge No. 313, for the sum of $500.  All
the water-power rights of the plaintiffs or other persons in-
terested in the lands in the water power known as the Nar-
racong mill power were thereby reserved by the plaintiffs,
and it was provided that such alteration of the creek bed
should not obstruct or damage the free fall of the tail-race
away from the mill.  The plaintiffs further stipulated therein
that there should be maintained by the defendant or its as-
signs one good grade crossing in lieu of the opening under
bridge No. 313,— such crossing to be built by the defendant
in such reasonable place as should be designated by the

plaintiffs, or either of them; that the plaintiffs would convey such rights to the defendant by good and sufficient conveyance thereof, within the time limited, upon demand of the defendant or its authorized agent and payment or tender of the amount above specified, and would so release all claims for damages for so turning the creek and filling in the opening; that the defendant, however, should not be held liable or bound to take such grant, except at its option; that, in the event of its not taking the purchase as therein provided, it should not be held liable for any damages or compensation therefor, or growing out of the same; that the defendant should not be bound to make or maintain a suitable grade grossing as therein provided for unless it should so fill up the opening under bridge No. 313; that such option was given with the understanding and stipulations that the passage under bridge No. 312 should be continued and maintained for the plaintiffs by the defendant in good and suitable manner.

The defendant thereupon accepted of such optional agreement, and paid to the plaintiffs the $500 mentioned therein, and thereupon, and on February 20, 1896, the plaintiffs and the wife of the plaintiff *Mills* duly executed, under their hands and seals, and duly acknowledged and delivered to the defendant, their deed, wherein and whereby they conveyed and warranted to the defendant, for the $500 mentioned, the right and privilege of altering and diverting the channel of Spring creek from its then present natural course upon and over all of that part of their lands described in section 17 then belonging to or possessed by the plaintiffs in such manner that the creek should flow only on the northeasterly side of the right of way of the defendant upon and over the lands of the plaintiffs and as defendant should deem advisable, together with the right to fill in and close up the opening in its railway then being spanned by bridge No. 313; that the plaintiffs, for themselves, their heirs and

assigns, did thereby release, discharge, and forever acquit the defendant, its successors and assigns, of and from any and every claim and demand of every name· and nature arising or to arise or grow out of the changing and diverting said creek and closing the opening at bridge No. 313, provided, however, that it was understood and agreed that in case the defendant should cause the opening at bridge No. 313 to be filled and closed up, as therein stated, it was to construct and maintain a good and sufficient grade crossing at such reasonable place as should be designated by the plaintiffs, which grade crossing should be in lieu of the opening at bridge No. 313, and that nothing therein contained should interfere with the passage under bridge No. 312, and that such alteration of the creek channel should not obstruct or damage the free fall of the tail race away from the mill on said premises. Thereupon the defendant changed the channel of Spring creek as authorized in the option agreement and deed, and filled up the opening under bridge No. 313, and had, at the time of the commencement of this action, partially constructed a grade crossing at a point designated by the plaintiff *Job Mills*, and was ready and willing to complete the same, which crossing was about 480 feet southeasterly from bridge No. 313. The passage under the old bridge No. 312 was about 100 feet northwesterly from the margin of the stream, and the opening thereof was twelve feet wide between the wooden bents, and the same had been closed up, and a new iron bridge, much shorter than the old one, constructed across the stream at that point, and the same rested upon iron abutments, and such abutment on the westerly side came to within from seven to ten feet of the westerly margin of the stream, and the roadway was between such abutment and the stream; so that to get to it from the south it was necessary to turn from the old roadway, about 150 feet south of the old opening, to the northeast, to the narrow passageway between the abutment and

the stream, and then turn and go north along the margin of the stream for nearly 100 feet, and then turn and go northwesterly until reaching the old roadway.

Apparently there is no way of getting from the Lodi and Okee highway to the premises of the plaintiffs northeasterly of the railway, except through the narrow passageway under the iron bridge No. 312 and the grade crossing mentioned.

The court refused to admit in evidence the optional agreement alleged in the complaint, and held, in effect, that the right to claim damages must be regarded as being based entirely on the deed; that the clause in the deed that "nothing herein contained shall interfere with the passage under bridge No. 312" neither granted any right nor conveyed any interest not in existence before that deed was made; that, if the language had any force and effect, it was more in the nature of a limitation and construction of the language of the deed which preceded.

It is well settled that parol evidence is admissible to explain the subject matter of an agreement or deed, although not to vary its terms. *Ogilvie v. Foljambe*, 3 Mer. 53. In that case Sir WILLIAM GRANT, M. R., said: "Parol evidence has always been admitted, in such a case, to show to what house and to what premises the treaty related." The ruling in that case has frequently been sanctioned, not only in England, but in this country. *Shardlow v. Cotterell*, 20 Ch. Div. 90; *Plant v. Bourne* [1897], 2 Ch. Div. 281. This court has expressly held that, "A deed with a description otherwise uncertain should be construed with reference to the actual rightful state of the property at the time of its execution, and extrinsic evidence of that state is admissible to aid in the construction." *Whitney v. Robinson*, 53 Wis. 309. So this court has held, in effect, that, although parol evidence is inadmissible to change or vary the terms of a written agreement or deed, yet it is admissible to show the true consideration upon which it is based, even where it

differs from that expressed in the conveyance, if not inconsistent with it. *Kickland v. Menasha W. W. Co.* 68 Wis. 34; *Becker v. Knudson,* 86 Wis. 14, 18; *Beckman v. Beckman,* 86 Wis. 655, 660; *Salter v. Bank of Eau Claire,* 97 Wis. 87; *Morgan v. South Milwaukee L. V. Co.* 97 Wis. 275, 278; *Stites v. Thompson,* 98 Wis. 330. Some of these cases give as a reason for the rule that, when only a part of an entire agreement is reduced to writing, the residue may be proved by extrinsic evidence. *Beckman v. Beckman, supra,* and cases there cited. This is peculiarly so in the case of a deed which is ordinarily an execution of only one side of the contract upon which it is based. *Becker v. Knudson, supra,* and cases there cited.

In the case at bar the answer expressly admits that the defendant obtained title to the portions of its right of way in question by purchase and deed from Narracong in 1871, and that the plaintiffs subsequently acquired title to the other premises described through mesne conveyances from Narracong. Since the defendant had the absolute title to the entire right of way before the plaintiffs obtained title, and when they made their deed to the defendant in 1896, it is very obvious that the clause in that deed that "nothing herein contained shall interfere with the passage under bridge No. 312" did not and could not operate as a limitation upon anything therein granted, as suggested by the trial court; nor could those words operate as a construction upon any of the preceding language of the deed, since none of such language pertained to that portion of the defendant's right of way. In fact the deed only conveys and warrants, or attempts to convey and warrant, to the defendant, "the right and privilege to alter and divert the channel of Spring creek from its" then "present natural course upon and over all that part of the northeast quarter of the southeast quarter of section 17," then "belonging to or possessed by" the plaintiffs. Those premises were all west of the mill,

and more than 1,000 feet northwest of bridge No. 312. It. did not grant, nor attempt to grant, to the defendant, the right of way to which it held the absolute title, but only such rights and privileges as then belonged to or were possessed by the plaintiffs, and therein conveyed and warranted. It moreover recognized an existing right in the plaintiffs. to pass and repass under bridge No. 313, as they had for many years, by expressly granting to the defendant "the right to fill and close up the opening *in its railway*" then "spanned by bridge No. 313," *provided* it "constructed and maintained a good and sufficient grade crossing,": as stipulated. The clause in the deed that nothing therein contained shall "interfere with the passage under bridge No. 312" must be regarded as having been inserted for a purpose. That purpose, manifestly, was to expressly recognize a thenexisting right in the plaintiffs of passing and repassing under that bridge, as they and their grantors had for more than twenty years, notwithstanding the same was upon the defendant's right of way; and that such right should continue as in the past, and hence that the defendant should not interfere with such passage. By accepting that deed the defendant became bound by such recognition and conditions, the same as though the deed had also been executed by the defendant. *Hutchinson v. C. & N. W. R. Co.* 37 Wis. 582; *Schweitzer v. Connor*, 57 Wis. 179; *Chloupek v. Perotka*, 89 Wis. 551.

It is equally true that the acceptance of the optional agreement by paying the $500 named therein, and consenting to accept such deed, made that agreement a binding contract between the parties. The agreement and deed may therefore be considered together as constituting the contract of purchase. *Ohlert v. Alderson*, 86 Wis. 436. Here both instruments are under seal. The purpose of an ordinary deed of land is not to state the terms of the contract in pursuance of which the land is conveyed, but to pass the title. *Collins*

*v. Tilloun*, 26 Conn. 368. By referring to such optional agreement, we find that it was "given with the understanding and stipulations that the passage under bridge No. 312 shall be continued and maintained for the grantors by said railway company in good and suitable manner." Thus it appears that the consideration moving to the plaintiffs for their grant to the defendant was not only the $500, and the construction and maintenance of the grade crossing, but also the continuance and maintenance by the defendant of the passage under bridge No. 312 for the use of the plaintiffs. Certainly the optional agreement was admissible in evidence for the purpose of showing that the defendant agreed to continue and maintain such passageway as a part of the consideration for such conveyance.

Since that part of that agreement to be so performed by the defendant had no connection with any right or privilege granted by the plaintiffs, it did not merge in, nor become ineffectual by reason of the execution and delivery of, the deed. Thus it has been held that "a covenant contained in an agreement for the conveyance of a tract of land to pay for what it may lack of a certain quantity is not performed by conveying the land, describing it to contain that quantity, if it do not in fact contain it." *Speed's Ex'rs v. Hann*, 1 T. B. Mon. 16; *S. C.* 15 Am. Dec. 78. So it has been held that "the execution and delivery of a deed by the vendor, pursuant to an executory contract for the sale of land, a portion of the purchase money remaining unpaid and no fresh security therefor being taken, does not extinguish the contract in respect to a provision therein for an increase or rebate of the purchase money in proportion to any excess or deficiency which might exist in the quantity of the land." *Witbeck v. Waine*, 16 N. Y. 532. So it has been held that "the general rule is that, where there is a contract for the sale of land, by the terms of which a deed is to be subsequently given, the delivery and acceptance of the deed

Mills and another vs. The Chicago & Northwestern R. Co.

merges the contract in it, and the contract is superseded by the deed as to such provisions as are covered by the conveyance made in pursuance of its terms, and *remains in force only as to any other provisions it may contain.*" *Schoonmaker v. Hoyt,* 148 N. Y. 425. See, also, *Disbrow v. Harris,* 122 N. Y. 362; *Morris v. Whitcher,* 20 N. Y. 41; *Buzzell v. Willard,* 44 Vt. 44. These adjudications are in harmony with the adjudications of this court. *Helmholz v. Everingham,* 24 Wis. 266; *Hutchinson v. C. & N. W. R. Co.* 37 Wis. 582. Thus, in *De Forest v. Holum,* 38 Wis. 516, the parties entered into an executory contract for the exchange of certain lands, and also for the sale of certain other lands. The contract stated that the balance of purchase money was *about* $5,250,— depending upon a survey; and also that there was an additional sum of $500 to be paid in a certain contingency. In pursuance of such contract, deeds were exchanged, and a mortgage taken back for the liquidated balance of the purchase money, but not for the contingent liability; and it was held on demurrer "that the taking of a mortgage for such liquidated purchase money, and the omission therefrom of the covenant for payment of an additional contingent sum of $500, were not a waiver of the vendor's possible right of a future lien for such additional sum; that, when the contingency named in the contract happened, the $500 became purchase money of the lands, and the vendor acquired a lien upon the lands therefor." See, also, *Green v. Batson,* 71 Wis. 54.

The rulings of the trial court were wrong.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.